[Doc. Nos. 40, 41, 42, 47, 51, 76, 77, 78]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHIESI USA, INC., CORNERSTONE BIOPHARMA, INC., and EKR THERAPEUTICS, LLC,<br><br>        Plaintiffs,<br><br>   v.<br><br>SANDOZ INC., SANDOZ AG, and ACS Dobfar Info SA,<br><br>        Defendants. | Civil No. 13-5723 (NLH/AMD) |

## MEMORANDUM OPINION AND ORDER

In this patent infringement action, Plaintiffs Chiesi USA, Inc., Cornerstone Biopharma, Inc., and EKR Therapeutics, LLC (collectively, "Plaintiffs") generally allege that Defendant Sandoz Inc.'s (hereinafter, "Defendant") attempt to produce, market, and/or distribute a generic ready-to-use premixed nicardipine injection infringes four of Plaintiffs' patents. Presently before the Court are the parties' various submissions concerning the entry of a discovery confidentiality order (hereinafter, "DCO"). The parties agree to the entry of a DCO, but dispute the inclusion of a patent prosecution bar.[1]  For the

---

[1] The Court conducted an in-person conference on April 16, 2014 concerning the issue of a patent prosecution bar, at which time the Court directed the parties to submit a revised proposed form

reasons set forth herein, the Court finds that Defendant has failed to demonstrate good cause sufficient for the imposition of a patent prosecution bar and, therefore, denies without prejudice Defendant's informal application.

The Court's Order dated August 15, 2014 sets forth the background of this patent infringement action, and shall not be reiterated herein. (See generally Order [Doc. No. 168], Aug. 15, 2014.) Rather, with respect to the pending submissions, the Court notes that Defendant asserts that Plaintiffs' active prosecution of patent applications related to the patents-in-suit warrants the inclusion of a patent prosecution bar in any DCO entered in this action. (See Letter [Doc. No. 42], 1.) Defendant specifically asserts that the breadth of potential disclosures in this action will require Defendant to disclose non-public information concerning "the precise ingredients," the "method of manufacture," the container "composition" and "design" of Defendant's generic nicardipine product. (Id. at 5; see also Letter [Doc. No. 51].) Defendant therefore asserts that it "faces the risk that knowledge of its highly confidential information will improperly affect [the] recipient['s] advice and guidance[,]" and that Plaintiffs and/or

---

of a patent prosecution bar without prejudice to the parties' positions with respect to the entry of a patent prosecution bar. (See Order on Informal Application [Doc. No. 72], Apr. 16, 2014, 1-2.)

counsel for Plaintiffs may inadvertently and/or subconsciously misuse this information in connection with (and for the benefit of) Plaintiffs' active prosecution of patents related to the patents at issue in this litigation. (Letter from Defendant regarding DCO [Doc. No. 76], 2.) Defendant therefore asserts that the DCO must include a patent prosecution bar precluding counsel involved in the discovery in this litigation from drafting new patent claims and/or amendments, in addition to drafting claim specifications and/or rendering advice "on arguments to be made to the [Patent and Trademark Office] that may likewise affect claim scope." (Id.) Defendant further asserts that the bar must "appropriate[ly]" reflect the subject matter of the patents-in-suit, by barring patent prosecution activities concerning nicardipine parenteral formulations, the storage container, and the various methods for production and use of nicardipine formulations. (Id. at 3; see also Letter from Defendant Sandoz Inc. – Response to Plaintiffs' May 9, 2014 Submission [Doc. No. 86], 3 (asserting that Defendant's "product is a complex product with a particular active ingredient, in a certain formulation, in a certain container; [and that] the patents in suit likewise contain elements relating to each of these areas[,]" thereby creating "a grave and recognized risk of

3

misuse").)  For those reasons, Defendant specifically moves for the inclusion in the DCO of the following provision:[2]

> Any person that receives Attorneys' Eyes Only technical or regulatory information from another party may not, during the pendency of this action and for one year thereafter, participate in, assist in, or advise regarding the drafting of patent claims, claim amendments, and patent specifications, or regarding arguments to be made in any proceeding before the U.S. Patent and Trademark Office (or equivalent foreign agency), relating to patents or patent applications owned or controlled by the person, their employer or clients, or the receiving party concerning the subject matter of the patents in suit, i.e., pre-mixed nicardipine parenteral formulations, their containers, active ingredients, methods of manufacture and methods of treatment.

---

[2] Defendant initially proposed the following patent prosecution bar:

> All persons having access to Confidential Material or Attorneys' Eyes Only material received from another party must not currently be and for the duration of one year after the conclusion of the litigation (including appeals) be involved formally or informally, directly or indirectly, in the prosecution of patents or patent applications (including but not limited to patent office proceedings that may lead to the procurement of new or amended claims) relating in any way to nicardipine or nicardipine formulations (including but not limited to methods of using, manufacturing, or preparing such compounds, compositions, or formulations), where such patents or applications are owned or controlled by the person, their employer or clients, or the receiving party.

(See [Proposed] Discovery Confidentiality Order [Doc. No. 40-1], ¶ 6; Exhibit A [Doc. No. 42-1], ¶ 6.) On the record on April 16, 2014, the Court reserved decision with respect to the inclusion of a patent prosecution bar. At that time, however, the Court found the scope of Defendant's initial prosecution bar inappropriate, and directed Defendant to meet and confer with Plaintiffs and to submit a revised version to the Court. (See generally Order on Informal Application [Doc. No. 72], Apr. 16, 2014.)

4

(See [Proposed] Discovery Confidentiality Order [Doc. No. 76-1], ¶ 6.)

Plaintiffs generally assert that Defendant has failed to demonstrate "'a ***clearly defined, specific*** and serious injury'" sufficient to support the imposition of a patent prosecution bar.[3] (Letter from Michael Griffinger [Doc. No. 83], 3 (citation omitted) (emphasis in original).) Plaintiffs assert

---

[3] Plaintiffs initially opposed the entry of Defendant's proposed patent prosecution bar in part because neither party had "specifically designated any individuals to receive confidential information under the DCO." (Letter from Michael R. Griffinger to the Honorable Ann Marie Donio, U.S.M.J. [Doc. No. 47], 1.) Plaintiffs asserted at that time that, prior to the imposition of a patent prosecution bar, binding Federal Circuit case law requires Defendant to first identify specific DCO designees that pose "an actual risk of inadvertent disclosure or competitive decisionmaking" in light of the specific individual's "job function or patent prosecution responsibilities." (Id. at 2, 4.) During the in-person conference on April 16, 2014, the Court directed the parties to identify and exchange lists of individuals to be designated as recipients of the parties' confidential information. (See Order on Informal Application [Doc. No. 72], Apr. 16, 2014, 1-2.) Having exchanged the relevant designations, Plaintiffs assert that their "designation of two in-house attorneys" moots the pending request, in light of the fact that these designees perform only "'high altitude'" oversight of patent prosecution activities, and are not otherwise involved in "any competitive decision[]making" or patent prosecution. (Letter from Michael R. Griffinger [Doc. No. 93], 1 (citation omitted); Letter from Michael R. Griffinger [Doc. No. 83], 2-3.) Defendant, however, dispute Plaintiffs' characterization of the strategic involvement of their designees and counsel in this action, particularly given the "small size" of Plaintiffs' legal department, and because even such high level oversight "necessarily involves advising regarding the scope of future patent claims that Plaintiffs hope to obtain and assert against [Defendant]." (Letter from Defendant, Inc. – Response to Plaintiffs' May 9, 2014 Submission [Doc. No. 86], 2-3.)

5

that Defendant instead predicates its assertions concerning the necessity of a patent prosecution bar upon "'mere general allegations'" of harm, without identifying "'specific facts'" to demonstrate an entitlement to such a bar. (Id. at 3-4.) Moreover, Plaintiffs assert that Defendant "cannot demonstrate that its requested bar reasonably reflects any 'risk'" of misuse, particularly in light of the fact that Defendant's proposed generic nicardipine product constitutes "a qualitative and quantitative copy" of Plaintiffs' brand name nicardipine product. (Id. at 4; see also Letter from Michael R. Griffinger [Doc. No. 93], 1 ("although [Defendant] admits that its generic product 'mirrors' Plaintiffs' patented drug product, it still vaguely maintains—without specifying any particular harm—that information relating to its generic copy could somehow be used 'to craft claims that [Plaintiffs] would know would cover [Defendant's] product").) Plaintiffs also assert that the unlimited scope of Defendant's proposed prosecution bar renders the proposed provision unworkably vague and overbroad, because the "proposed bar broadly prohibits oversight, direction, or advice with respect to patent prosecution or patenting strategies." (See Letter from Michael Griffinger [Doc. No. 83], 5-6; see also Letter from Michael R. Griffinger to the Honorable Ann Marie Donio, U.S.M.J. [Doc. No. 41], 4-5.) Plaintiffs therefore assert that the scope of any prosecution bar should be

6

implemented in accordance with Lifescan Scotland, Ltd. v. Shasta Techs., LLC, No. 11-4494, 2013 WL 5935005 (N.D. Cal. Nov. 4, 2013), in which the Northern District of California found the defendants "suitably protected by an order" barring the "*specified* individuals from using the defendants' confidential information in any proceedings in the PTO" and which barred the *specified* individuals "from any involvement in drafting any new claims or claim amendments." Id. at *6 (emphasis added). (See also Letter from Michael Griffinger [Doc. No. 83], 5.) Plaintiffs further assert that Defendant's proposed bar "extends well beyond the subject matter of the patents in suit" by encapsulating patent work concerning the active ingredients associated with Plaintiffs' brand product (and Defendant's compositionally identical proposed generic). (Letter from Michael Griffinger [Doc. No. 83], 5-6; see also Letter from Michael R. Griffinger to the Honorable Ann Marie Donio, U.S.M.J. [Doc. No. 41], 5 (citation omitted).) Consequently, while contending that Defendant's present proffer fails to demonstrate the propriety of a patent prosecution bar,[4] Plaintiffs assert that any prosecution bar should be limited as follows:

---

[4] In lieu of an express patent prosecution bar, Plaintiffs propose the entry of a DCO which includes the following provision:

> A party may not disclose Confidential or Attorneys' Eyes Only information to an in-house attorney or in-

7

> Any person that receives Attorneys' Eyes Only technical or regulatory material from another party may not, during the pendency of this action (including appeals), participate in, assist in, or advise regarding the drafting of new patent claims or claim amendments in any proceeding before the U.S. Patent and Trademark Office (or equivalent foreign agency) relating to patents or patent applications concerning the subject matter of the patents in suit, i.e., pre-mixed nicardipine parenteral formulations.

(Letter from Michael Griffinger [Doc. No. 78], 1.)

Resolution of the pending application turns on the evaluation of Federal Circuit case law concerning the entry of a

---

> house advisor pursuant to paragraph 4(c) or paragraph 5 of this Order until after the in-house attorney or in-house advisor has signed an undertaking in the form of Exhibit A to this Order and provided a description of the in-house attorney's or in-house advisor's patent prosecution activities on behalf of any party to this action. At least ten (10) business days before the first disclosure of Confidential or Attorneys' Eyes Only information to an in-house attorney or in-house advisor, the party obtaining the undertaking must serve it via email on all other parties. If the producing party has good cause to object to the disclosure, it must serve the party proposing to make the disclosure with a written objection within ten (10) business days after service of the identification. Unless the parties resolve the dispute within ten (10) business days after service of the objection, or a longer period if the parties so agree, the producing party must move the Court promptly for a ruling, and the Confidential or Attorneys' Eyes Only information may not be disclosed to the in-house attorney or in-house advisor without the Court's approval. An in-house attorney or in-house advisor granted access to Confidential or Attorneys' Eyes Only information under this paragraph shall provide an updated description of his/her patent prosecution activities if his/her patent prosecution [activities] on behalf of any party to this action change.

(Exhibit A [Doc. No. 47-1], ¶ 6.)

discovery confidentiality order. See In re Deutsche Bank Trust Co. Ams., 605 F.3d 1373 (Fed. Cir. 2010) (setting forth the consideration relevant to the entry of a patent prosecution bar). The Court therefore turns to In re Deutsche Bank Trust Company Americas, 605 F.3d 1373 (Fed. Cir. 2010) (hereinafter, "Deutsche")—the interpretation of which both parties rely upon in their pending submissions.[5] (See, e.g., Letter from Michael

---

[5] The parties dispute the manner in which Deutsche applies to the consideration of a patent prosecution bar. Plaintiffs allege that Deutsche requires a counsel-by-counsel inquiry in determining the existence of a risk of inadvertent disclosure *and* in balancing the potential harm to the non-moving party. (See Letter from Michael R. Griffinger to the Honorable Ann Marie Donio, U.S.M.J. [Doc. No. 47], 2.) Defendant, by contrast, generally asserts that Deutsche presumes imposition of a patent prosecution bar, and only requires a counsel-by-counsel determination with respect to a request for an exemption from the bar. (See Letter [Doc. No. 51], 2.) The Court, however, finds Defendant's view overly narrow. Deutsche clearly contemplates an examination of the parties' respective positions prior to the imposition of a patent prosecution bar. See Deutsche, 605 F.3d at 1380-82. Moreover, the automatic entry of a prosecution bar, particularly when opposed, would effectively preclude the opposing party from presenting its arguments concerning the risk of inadvertent disclosure—one of the considerations set forth in the Deutsche framework. See NeXedge, LLC v. Freescale Semiconductor, Inc., 820 F. Supp. 2d 1040, 1043 (D. Ariz. 2010) (following a two-step inquiry, which first requires the moving party to show, on a counsel-by-counsel basis, "that there is an 'unacceptable' risk of inadvertent disclosure of confidential information," and then, balancing that risk against the potential harm to the non-movant) (citations omitted); Iconfind, Inc. v. Google, Inc., No. 11-0319, 2011 WL 3501348, *5 (E.D. Cal. Aug. 9, 2011) ("Because Google has not met its initial burden of showing that there exists a risk of inadvertent disclosure (i.e., that Iconfind's counsel participate in 'competitive decisionmaking') the court does not find that a prosecution bar is necessary."); Kraft Foods Global, Inc. v. Dairilean, Inc., No. 10-8006, 2011 WL

9

R. Griffinger to the Honorable Ann Marie Donio, U.S.M.J. [Doc. No. 41], 3; Letter [Doc. No. 42], 3.)

In <u>Deutsche</u>, the Federal Circuit set forth a multi-part framework applicable to the determination of whether the circumstances in a particular action warrant the inclusion in a DCO of a patent prosecution bar. <u>Id.</u> In that regard, the Court first rejects Defendant's assertion that <u>Deutsche</u> presumes the imposition of a patent prosecution bar without requiring any counsel-specific inquiry. (<u>See, e.g.</u>, Letter [Doc. No. 42], 3-4.) Indeed, the <u>Deutsche</u> court expressly indicated that, "[i]n evaluating whether to grant a patent prosecution bar *in the first instance*, a court must be satisfied that the kind of information that will trigger the bar" relates "to the preparation and prosecution of patent applications" before the Patent and Trademark Office. <u>Id.</u> at 1381 (emphasis added). The Court finds that such "first instance" analysis clearly contemplates an individualized and fact-sensitive inquiry with respect to specific individuals. <u>See</u> <u>generally</u> <u>id.</u> Moreover, any *per se* imposition of a patent prosecution bar without an

---

1557881 (N.D. Ill. Apr. 25, 2011) ("Kraft has not cited any evidence to demonstrate that Dairilean's outside counsel is involved in competitive decisionmaking with respect to Dairilean or any of its other clients who might compete with Kraft."); <u>contra</u> <u>Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC</u>, 881 F. Supp. 2d 254, 257-58 (D.P.R. 2012) (determining the reasonableness of a prosecution bar, rather than applying the two-step inquiry).

individualized inquiry would eviscerate the "good cause" requirement of Federal Rule of Civil Procedure 26(c).  See generally Fed. R. Civ. P. 26(c); see also Supernus Pharmas., Inc. v. Actavis, Inc., No. 13-4740, 2014 WL 654594, at *1-*2 (D.N.J. Feb. 20, 2014) (affirming the magistrate judge's order denying without prejudice defendants' request to include a patent prosecution bar in the DCO for failure to make the requisite showing).

Consequently, the Court notes that the Deutsche framework first considers "the risk of inadvertent disclosure or competitive use" in light of the nature and extent of the *specific attorneys' involvements*, if at all, in patent prosecution.  Id. at 1380.  In evaluating the risk in light of the attorneys' involvements, the Deutsche court delineated certain guideposts applicable to this risk inquiry as follows:

1. Minimal attorney engagement in patent prosecution (by, for example, "reporting office actions or filing ancillary paperwork") gives rise to a limited risk of inadvertent disclosure;
2. "Substantial[]"engagement in patent prosecution (by, for example, "investigating prior art" or "making strategic decisions on the type and scope of patent protection") involves a high risk of inadvertent disclosure; and
3. A middle "range of patent prosecution activities" (involving, for example, only an occasional opportunity "to shape the content of a patent application") that "may pose a closer question" concerning the propriety of a patent prosecution bar, but nonetheless require an individualized inquiry.

11

Id. at 1379-80. With respect to the classification of attorney involvement in patent prosecution activities, Deutsche expressly cautioned, however, that "[t]he facts, not the category must inform the result." Id. at 1379; see also id. at 1381 (noting that, "[f]or example, financial data and other sensitive business information, even if deemed confidential, would not normally be relevant to a patent application and thus would not normally be expected to trigger a patent prosecution bar"). The risk presented by the *specific* level of attorney engagement in patent prosecution activities must then be balanced against "the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." Id. In balancing these "conflicting interests[,]" Deutsche sets forth the following factors to be considered:

1. "[T]he extent and duration of counsel's past history in representing the client before the PTO,
2. [T]he degree of the client's reliance and dependence on that past history, and
3. [T]he potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO."

Id. at 1381 (citation omitted). After conducting the requisite balancing, courts must then ascertain whether the movant has sufficiently demonstrated that information "that will trigger the bar" relates "to the preparation and prosecution of patent

12

applications before the PTO." Id. at 1381. Courts must accordingly consider:

1. "[T]he scope of activities prohibited by the bar,
2. [T]he duration of the bar, and
3. [T]he subject matter covered by the bar[.]"

Id. Subsequent to the issuance of a patent prosecution bar, a party may, notwithstanding a finding that a bar should be issued, request that a particular individual be exempted from the preclusion effects of the bar, by demonstrating, on a counsel-by-counsel basis, that:

1. "[C]ounsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation"; and
2. "[T]he potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use."

Id.

The party seeking the inclusion of a patent prosecution bar bears the burden of demonstrating good cause sufficient for issuance of such a bar. Id. at 1378 ("A party seeking a protective order carries the burden of showing good cause for its issuance.") (citation omitted); see also FED. R. CIV. P. 26(c)(1)(B), (G) (noting that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense, including[:]" "specifying terms" for the disclosure or discovery and/or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way"). The party requesting the bar must therefore demonstrate "that 'specific prejudice or harm will result'" in the absence of a protective order. In re Violation of Rule 28(D), 635 F.3d 1352, 1358 (Fed. Cir. 2011) (citations omitted) (generally considering the requisite showing pursuant to Federal Rule of Civil Procedure 26(c)).

Here, the Court concludes that Defendant has failed to set forth facts sufficient to demonstrate a risk of inadvertent disclosure. (See generally Declaration of Josephine Liu, J.D., PH.D in Support of Discovery Confidentiality Order [Doc. No. 76-2], ¶¶ 15-27.) Rather, Defendant asserts that there exists a strong, substantiated risk of inadvertent disclosure in light of Plaintiffs' ongoing prosecution of "additional patent applications related to the patents-in-suit." (Id. at ¶ 16; see also Letter from Sandoz Inc. regarding Discovery Confidentiality Order [Doc. No. 40]; Letter [Doc. No. 42]; Letter [Doc. No. 51].) Defendant asserts that this active prosecution requires the issuance of a patent prosecution bar because the patent prosecution process will enable Plaintiffs "to contend that claims that [Plaintiffs] draft or amend **now**, directed to

14

nicardipine products," relate back to the initial filing date of the "related" applications. (Declaration of Josephine Liu, J.D., PH.D in Support of Discovery Confidentiality Order [Doc. No. 76-2], ¶¶ 16-18 (emphasis in original).) Defendant, however, proffers no specific facts concerning the nature and extent of the specific attorneys' (and/or designees) alleged engagement with respect to patent prosecution activities.  See Deutsche, 605 F.3d at 1378-80 (setting forth the *specific* showing necessary to demonstrate a risk of inadvertent disclosure). Rather, Defendant argues that counsel for Plaintiffs and/or the designees cannot compartmentalize and appropriately segregate any confidential information obtained in the context of this litigation.  (See, e.g., Letter from Defendant Sandoz Inc. - Response to Plaintiffs' May 9, 2014 Submission [Doc. No. 86], 3 (asserting that Deutsche Bank recognized that "the human mind cannot compartmentalize information").)  See also Deutsche Bank, 605 F.3d at 1378 (recognizing that, *in certain situations*, "even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise").  Here, however, Plaintiffs have repeatedly asserted that its outside counsel, Frommer Lawrence & Haug LLP, neither prosecutes patents on Plaintiffs' behalf, nor assists Plaintiffs in competitive decision making.  (See, e.g., Letter

15

from Michael R. Griffinger to the Honorable Ann Marie Donio, U.S.M.J. [Doc. No. 41], 3; (Letter from Michael R. Griffinger [Doc. No. 83], 3 (asserting that any "indirect involvement" counsel for Plaintiffs has in patent prosecution "would be limited to counseling [Plaintiffs] on issues unrelated to Defendant's confidential information, e.g., the scope and content of prior art references and other validity issues").) Plaintiffs similarly assert that the nature of the DCO designees' oversight of patent activities does not include "any competitive decision[]making" or active patent prosecution. (Letter from Michael R. Griffinger [Doc. No. 93], 1 (citation omitted); Letter from Michael R. Griffinger [Doc. No. 83], 2-3.) Defendant disagrees with Plaintiffs' characterizations concerning the nature and extent of the patent prosecution activities (and counsels' and the designees' abilities to segregate confidential information between various patent actions), but fails to demonstrate any specific facts to support Defendant's assertion concerning these individuals. (See, e.g., Letter from Sandoz Inc. – Response to Plaintiffs' May 9, 2014 Submission [Doc. No. 86], 2-3 (asserting, without support, that any advice by counsel for Plaintiffs concerning patent validity issues "necessarily involves advising regarding the scope of future patent claims that [Cornerstone] hope[s] to obtain and assert against Sandoz"); Declaration of Josephine Liu, J.D.,

16

PH.D in Support of Discovery Confidentiality Order [Doc. No. 76-2], ¶¶ 15-27.)  In light of Plaintiffs' assertions concerning the patent prosecution involvement of the specific attorneys in this litigation, the Court finds Defendant's assertions concerning the risk of inadvertent disclosure lack the appropriate foundation, and therefore insufficient at this time to impose a patent prosecution bar in accordance with the standard set forth in Deutsche.  See Warner Chilcott Labs. Ir. Ltd. v. Impax Labs., Inc., Nos. 08-6304, 09-0228, 09-0469, 09-1233, 09-2073, 2009 WL 3627947, at *3 (D.N.J. Oct. 29, 2009) (denying defendant's request for a patent prosecution bar where defendant failed to allege "any specifics showing that anyone serving as [p]laintiffs' counsel [would] intentionally or unintentionally disclose or utilize confidential information in their future activities").  The Court accordingly denies without prejudice Defendant's application for a patent prosecution bar in the form set forth in paragraph six (6) of Defendant's initially-proposed DCO (see Exhibit A [Doc. No. 42-1], ¶ 6) and its revised-proposed DCO.  (See [Proposed] Discovery Confidentiality Order [Doc. No. 76-1], ¶ 6.)  Rather, the Court concludes at this time that Plaintiffs' proposed paragraph six (6) provides an appropriate mechanism for *both* parties to timely object to the disclosure of *specific* confidential information to the DCO designees.  (See generally Exhibit A [Doc. No. 47-1], ¶

17

6.) Consequently, for the reasons set forth herein, and for good cause shown:

IT IS on this 21st day of August 2014,

**ORDERED** that Defendant's informal application for the issuance of a patent prosecution bar [Doc. Nos. 40, 42, 51, 76] shall be, and hereby is, **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the discovery confidentiality order appended to Plaintiffs' March 4, 2014 submission [Doc. No. 47-1] shall be entered in this action.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Noel L. Hillman